# No. 25-1385

## IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

KELLY MILLIGAN, on behalf of himself
and all others similarly situated,

*Plaintiff-Appellant*,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.; BANK OF
AMERICA CORPORATION; JOHN/JANE DOE 1, the Senior Vice
President-Human Resources Global Banking and Global Wealth and
Investment Management Administration at Bank of America Corp.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Western District of North Carolina,
Case No. 3:24-cv-00440, Hon. Kenneth D. Bell

## REPLY BRIEF FOR PLAINTIFF-APPELLANT (REDACTED)

John S. Edwards, Jr.
AJAMIE LLP
711 Louisiana, Suite 1600
Houston, TX 77002
(713) 860-1600
jedwards@ajamie.com

Robert A. Izard, Jr.
IZARD, KINDALL & RAABE, LLP
29 South Main St., Suite 305
West Hartford, CT 06107
(860) 493-6295
rizard@ikrlaw.com

Mathew P. Jasinski
Riley Breakell
MOTLEY RICE LLC
20 Church St., 17th Floor
Hartford, CT 06103
(860) 882-1681
mjasinski@motleyrice.com
rbreakell@motleyrice.com

August 28, 2025         *Counsel for Plaintiff-Appellant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ii

INTRODUCTION ............................................................................1

ARGUMENT ...................................................................................2

    I.    Merrill's plan is an ERISA "pension plan." ...........................2

        A.    A plan that postpones payments to employees
            until or after they leave is a pension plan....................3

            1.    Merrill's cases are distinguishable
                or unpersuasive, or both. ...................................11

            2.    Merrill's "slippery slope" hypotheticals miss
                their mark. ..........................................................15

        B.    Merrill's Plan results in a deferral of income by
            employees. ...................................................................17

        C.    Merrill's Plan defers income "to the termination
            of covered employment or beyond." ............................20

    II.    Merrill's Plan is not a bonus program exempt from
        ERISA. ................................................................................21

        A.    WealthChoice awards are not "bonuses." ...................21

        B.    Even bonuses are not exempt from ERISA. ................27

CONCLUSION ...............................................................................32

CERTIFICATE OF COMPLIANCE.......................................................33

CERTIFICATE OF SERVICE.............................................................34

# TABLE OF AUTHORITIES

## Cases

*Alessi v. Raybestos-Manhattan, Inc.*,
  451 U.S. 504 (1981) ...................................................................... 6, 18

*Berard v. Royal Elec., Inc.*,
  795 F.Supp. 519 (D.R.I. 1992) ............................................................ 5

*Boos v. AT&T, Inc.*,
  643 F.3d 127 (5th Cir. 2011) ........................................................... 7, 8

*Browe v. CTC Corp.*,
  15 F.4th 175 (2d Cir. 2021) ................................................................. 6

*Callan v. Merrill Lynch & Co.*,
  2010 WL 3452371 (S.D. Cal. Aug. 30, 2010) ................................... 27

*Depew v. MNC Financial, Inc.*,
  819 F.Supp. 492 (D. Md. 1993) ......................................................... 12

*Emmenegger v. Bull Moose Tube Co.*,
  197 F.3d 929 (8th Cir. 1999) ........................................... 13, 14, 26, 27

*Esden v. Bank of Boston*,
  229 F.3d 154 (2d Cir. 2000) ............................................................ 6, 7

*Faris v. S. Ute Indian Tribe*,
  2023 WL 7386870 (D. Colo. Nov. 8, 2023) ...................................... 26

*Fraver v. N.C. Farm Bureau*,
  801 F.2d 675 (4th Cir. 1986) ............................................................. 19

*Hagel v. United Land Co.*,
  759 F.Supp. 1199 (E.D. Va. 1991) .................................................... 12

*Hepple v. Roberts & Dybdahl, Inc.*,
  622 F.2d 962 (8th Cir. 1980) ............................................................. 24

*Inman v. Klockner-Pentaplast of Am., Inc.*,
  467 F.Supp.2d 642 (W.D. Va. 2006) ................................................. 12

ii

*Juric* v. *USALCO, LLC,*
    659 F.Supp.3d 619 (D. Md. 2023) ..................................................... 15

*Loper Bright Enterprises v. Raimondo,*
    603 U.S. 369 (2024) ......................................................................... 28

*McKinsey v. Sentry, Ins.,*
    986 F.2d 401 (10th Cir. 1993) .......................................................... 26

*Muldrow v. City of St. Louis,*
    601 U.S. 346 (2024) ..................................................................... 4, 10

*Murphy v. Inexco Oil Co.,*
    611 F.2d 570 (5th Cir. 1980) .............................................. 7, 8, 12, 13

*Oatway v. Am. International Group,*
    325 F.3d 184 (3d Cir. 2003) ........................................................ 13, 27

*Pasternack v. Shrader,*
    863 F.3d 162 (2d Cir. 2017) ......................................................... 10, 13

*Paul v. RBC Capital Markets,*
    2018 WL 784577 (W.D. Wash. Feb. 8, 2018) ................................. 7, 20

*Rappaport v. Guardian Life Ins. Co. of Am.,*
    2025 WL 1156760 (S.D.N.Y. Apr. 21, 2025) ................................ 23, 25

*Rathbun v. Qwest Commc'ns Intern. Inc.,*
    458 F.Supp.2d 1238 (D. Colo. 2006) ................................................ 7, 8

*Rich v. Shrader,*
    823 F.3d 1205 (9th Cir. 2016) ...................................................... 11, 17

*Scanlan v. American Airlines Group,*
    384 F.Supp.3d 520 (E.D. Pa. 2019) .................................................... 12

*Shafer v. Morgan Stanley,*
    2023 WL 8100717 (S.D.N.Y. Nov. 21, 2023) ................................. 7, 20

*Shafer v. Morgan Stanley,*
    2024 WL 4697235 (S.D.N.Y. Nov. 5, 2024) .............................. 7, 20, 25

*Skidmore v. Swift & Co.,*
   323 U.S. 134 (1944) ........................................................29

*Teague v. South Elevator Group, Inc.,*
   2003 WL 21418100 (M.D.N.C. Mar. 27, 2003) ...................14

*Thornburg v. Gingles,*
   478 U.S. 30 (1986) .......................................................3, 4

*Tolbert v. RBC Cap. Markets Corp.,*
   758 F.3d 619 (5th Cir. 2014).....................3, 6, 7, 10, 15, 16, 18, 20, 29

*United States v. Butler,*
   297 U.S. 1 (1936) ..........................................................18

*Williams v. Wright,*
   927 F.2d 1540 (11th Cir. 1991) .......................................23

*Wilson v. Safelite Group, Inc.,*
   930 F.3d 429 (6th Cir. 2019)......................................15, 26

## Statutes

29 U.S.C. §1002(2)(A) ........................... 1, 2, 8, 9, 10, 14, 17, 28

29 U.S.C. §1002(2)(B) ...............................................30, 31

29 U.S.C. §1053(a) .......................................................6, 18

29 U.S.C. §207(e)(3) ........................................................21

N.C. Gen. Stat. §95-25.6.................................................15

## Regulations

29 C.F.R. §2510.3-2(c) ............................ 21, 25, 28, 29, 32

40 Fed. Reg. 24642 (June 9, 1975) .................................30

## INTRODUCTION

This case turns on ERISA's definition of "pension plan." That definition includes any plan that *either* "(i) provides retirement income to employees, *or* (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." 29 U.S.C. §1002(2)(A) (emphasis added). When a plan defers financial advisors' ("FAs") annual commissions for eight years and pays nearly █% of FAs benefits after their employment ends, the plan falls within Subsection (ii) of ERISA's definition. *See* JA890.

Appellee Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill") spends 51 pages dodging the statute's text. Although Merrill accuses Milligan of rewriting ERISA, Appellees' Br. 23-24, it is actually Merrill that does so: Merrill asserts that Subsection (ii) applies only "if a plan *generally* 'results in a deferral of income,'" *id.* at 50 (emphasis added), even though the word "generally" nowhere appears in the statute. And Merrill insists that Subsection (ii) applies only if a plan "generally functions like a retirement plan." Appellees' Br. 26. But Merrill never explains why Congress used different language—"*provides* retirement income" in Subsection (i) versus "*results in* a deferral of income" in

Subsection (ii)—if each requires the same showing. Like the district court, Merrill blurs the distinction between these separate provisions.

Simply stated, Merrill reads "generally," "purpose," and "retirement income" into Subsection (ii), but it contains none of these words. Merrill also marshals inapposite precedents, invokes an inapplicable regulation, and advances policy arguments better directed to Congress—anything to avoid the plain language of Subsection (ii). Because that text compels the conclusion that ERISA governs Merrill's Plan, the district court's decision should be reversed.

## ARGUMENT

## I.    Merrill's plan is an ERISA "pension plan."

The parties agree that the central question on appeal is whether Merrill's WealthChoice Contingent Award Plan (the "Plan") "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond" under 29 U.S.C. §1002(2)(A)(ii). Appellant's Br. 27; Appellees' Br. 23. They also agree that the plain meaning of Subsection (ii) controls. Appellant's Br. 19; Appellees' Br. 33, 37. They even construe several operative terms the same way. For

example, a "deferral" is a postponement, "income"[1] is an employer's payment, and "the termination of covered employment or beyond" refers to when an employee leaves a company and afterwards. Appellees' Br. 33, 37; Appellant's Br. 22, 30. But only Milligan construes the plain meaning of the phrases "results in" and "for periods extending to."

### A.    A plan that postpones payments to employees until or after they leave is a pension plan.

The phrase "results in" focuses Subsection (ii)'s coverage on whether a deferral "arises as an effect of" the plan. Appellant's Br. 20 (citing *Tolbert v. RBC Cap. Markets Corp.*, 758 F.3d 619, 625 (5th Cir. 2014)); *see also Thornburg v. Gingles*, 478 U.S. 30, 35 (1986) (interpreting "results in" to concern "effect alone."). Pairing the phrase "for periods extending to" with "the termination of covered employment or beyond" contemplates income that is deferred until the end of employment. Appellant's Br. 22. Putting these words together, Milligan gives Subsection (ii)'s text its plain meaning: if the outcomes of a plan include

---

[1] Although Merrill notes that that the statute does not reference "compensation" specifically, Appellees' Br. 35, Merrill does not argue that "deferred compensation" means something different from "deferral of income."

postponing payments to employees until their employment ends, then the plan is a "pension plan." *See* Appellant's Br. 18-24.

In contrast, Merrill ignores key phrases, abandons plain meaning, and introduces extratextual requirements. Merrill glaringly ignores the phrase "results in." Merrill implies that a plan's results are merely relevant considerations under Subsection (ii) that may be superseded by other considerations. Appellees' Br. 29-30. But the text is clear: the results *are* the test. *See Thornburg*, 478 U.S. at 63. Merrill cannot explain how Subsection (ii)'s text supports treating the Plan's stated purpose as "the paramount consideration." Appellees' Br. 30.

As Merrill notes, courts should not add words to statutes. Appellees' Br. 24 (citing *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024)).[2] Merrill argues that Milligan improperly "adds words" to Subsection (ii) on the theory that his reading grants ERISA coverage "if a plan '*ever*'" results in a deferral of income. Appellees' Br. 24. But this illustrates that Milligan's reading is correct. Adding "ever" to the text would be redundant because

---

[2] In *Muldrow*, the Supreme Court rejected the argument that the phrase "discriminate against" in 42 U.S.C. §2000e-2(a)(1), requires "significant," "serious, or substantial" discrimination. *Muldrow*, 601 U.S. at 355. Imposing such "an elevated threshold of harm" would improperly "add words" to the statute. *Id.*

the text requires "a deferral," not some minimum number or value of deferrals. With no qualifying language, the question "Which trains stop downtown?" is the same question as "Which trains ever stop downtown?"

In contrast, *Merrill's* interpretation of Subsection (ii) adds words to the statute. First, Merrill contends that Subsection (ii) only covers plans that "generally" or "primarily" result in income deferrals, Appellees' Br. 26, 30, (i.e., trains that stop downtown *most or all of the time*). Second, after agreeing with Milligan about the meanings of "defer" ("to postpone") and "income" ("money or other form of payment that one receives"), Merrill defines "deferral of income" to include a requirement not contemplated by either word: "A deferral of income thus results when an *employee is entitled to payment now* for work already performed but does not receive that payment until later." Appellees' Br. 33 (emphasis added).

Merrill does not explain why a "deferral of income" requires an "entitlement to payment now." More fundamentally, an employee's "entitlement" to a benefit is another way to refer to when it vests. *See, e.g.*, *Berard v. Royal Elec., Inc.*, 795 F.Supp. 519, 526 (D.R.I. 1992) ("a vested right to pension benefits arises once a plan participant has met and satisfied all conditions establishing eligibility to receive the

benefits"). ERISA governs when pension benefits must vest. 29 U.S.C. §1053(a). Congress included these rules to curtail practices that caused employees to lose benefits if they stopped working for their employer. *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 510 n.10 (1981).

ERISA does not allow employers to evade its reach by imposing a condition that violates ERISA's vesting rules. *See Browe v. CTC Corp.*, 15 F.4th 175, 203 (2d Cir. 2021) ("Once benefits vest, they are nonforfeitable, even if their receipt must await the occurrence of future events."); *cf. Esden v. Bank of Boston*, 229 F.3d 154, 173 (2d Cir. 2000) ("A participant may not elect a forfeiture."). To the contrary, *Tolbert* expressly held that "Mandatory Deferred Compensation," for which the employee had no "present" right to payment, resulted in the deferral of income under Subsection (ii). 758 F.3d at 625.

Merrill attempts to distinguish *Tolbert* because it involved mandatory and voluntary deferred compensation, where the latter allowed employees to defer income they could have received earlier. Appellees' Br. 34. But *Tolbert*'s analysis did not hinge on this fact. Regardless of whether the deferral was mandatory or voluntary, Subsection (ii) applied because employees in both situations "forewent

income at some point in exchange for receiving income from the plan at a later date." 758 F.3d at 625 (cleaned up). Other courts have reached the same conclusion. *Paul v. RBC Capital Markets*, 2018 WL 784577, at *6 (W.D. Wash. Feb. 8, 2018)*; Shafer v. Morgan Stanley*, 2023 WL 8100717, at *20 (S.D.N.Y. Nov. 21, 2023) ("*Shafer I*")*; Shafer v. Morgan Stanley*, 2024 WL 4697235, at *18 (S.D.N.Y. Nov. 5, 2024) ("*Shafer II*").

No case supports Merrill's argument that any unsatisfied condition on a plan benefit excludes it from the ambit of a "deferral of income." Appellees' Br. 34-36. Plans "cannot contract around the statute." *Esden*, 229 F.3d at 173. Merrill misapprehends *Boos v. AT&T, Inc.*, 643 F.3d 127 (5th Cir. 2011), *Murphy v. Inexco Oil Co.*, 611 F.2d 570 (5th Cir. 1980) (which *Boos* relies on), and *Rathbun v. Qwest Communications International Inc.*, 458 F.Supp.2d 1238 (D. Colo. 2006). Appellees' Br. 34-35. These cases observe a point that is irrelevant here: a benefit is not deferred income when, due to its "inherent characteristics," its value can only be realized later. *Murphy*, 611 F.2d at 576.

In *Murphy*, employees received participation units tied to specific drilling in prospective oil and gas projects. *Id*. at 572-73. These royalty interests did not involve a "deferral of income" but rather a present

7

interest in future proceeds from the projects. *Id*. at 575. In contrast, Merrill requires FAs to defer payment of their share of *current* income. In *Boos* and *Rathbun*, the employers reimbursed participants for telephone services. *Boos*, 643 F.3d at 134; *Rathbun*, 458 F.Supp.2d at 1248. Such reimbursement benefits *cannot* take on the form of income until the beneficiary uses telecommunications services. Employees that had not yet paid for telephone services had not forgone any reimbursements. Thus, the benefits in *Rathbun* and *Boos* were not deferred income.

Notably, Merrill ignores the phrase "for periods extending to." Merrill argues that WealthChoice payments are deferred for eight years, not "until retirement or the termination of employment." Appellees' Br. 37. But Subsection (ii) does not say or require a deferral of income until "retirement." Subsection (ii) simply requires a deferral of income "for periods extending to the termination of covered employment or beyond." 29 U.S.C. §1002(2)(A)(ii). This can occur either by the "express terms" of the plan or "as a result of surrounding circumstances." 29 U.S.C. §1002(2)(A). Thus, even if the express terms of the plan do not require a deferral until the termination of employment, deferral periods

8

can nevertheless "extend to" the end of employment because of "surrounding circumstances." That's true here: FAs within eight years of retirement will necessarily have income deferred "for periods extending to the termination of covered employment or beyond." The statute does not require that all deferrals extend to the termination of covered employment for all participants.

Finally, Merrill disregards the context and legislative history that bolster Milligan's interpretation of the statute. First, Merrill ignores that, in drafting 29 U.S.C. §1002(2)(A), Congress abandoned a prior definition of employee pension benefit plans that was limited to those established for the purpose of providing retirement benefits. *See* Appellant's Br. 24-25.

Second, by insisting that Subsection (ii) must serve to "protect[] workers' retirement assets," Merrill effectively reads Subsection (ii) out of the statute. Appellees' Br. 28; *see also id.* at 26 ("ERISA covers a plan under clause (ii) if it generally functions like a retirement plan."). The district court made the same error. *See* JA545. Congress extended ERISA coverage both to plans that "(i) provide[] retirement income to employees" *and* to plans that result in certain income deferrals. 29 U.S.C.

9

§1002(2)(A). Interpreting Subsection (ii) to require plans to be "designed for the purpose of paying retirement or post-termination income" would "render the entirety of subsection (ii) superfluous, an unacceptable result." *Tolbert*, 758 F.3d at 624*; see also Pasternack v. Shrader*, 863 F.3d 162, 168 (2d Cir. 2017) (Subsections (i) and (ii) "set out independent tests.").

Congress's balancing of interests is reflected in the text, even if Subsection (ii) encompasses more plans than Merrill prefers. Merrill claims that ERISA was not enacted to provide a "windfall through a plan designed to promote retention." Appellees' Br. 28. Milligan seeks only his deferred compensation; if this constitutes a "windfall," then every ERISA recovery could be similarly characterized. Regardless, Merrill does not explain why a plan designed to retain employees until death, disability, or retirement is outside the scope of Congress's concern. *See Muldrow*, 601 U.S. at 358 (courts do "not add words to the law to achieve what some employers might think a desirable result").

Merrill also does not dispute that multiple purposes animate ERISA, including Congress's interest in promoting job mobility. Appellant's Br. 25-26. ERISA's mandatory vesting provisions embody

this interest, because they limit employers' ability to condition benefits on long periods of employment. *Id*. In the absence of legislative history revealing that certain concerns but not others animated Subsection (ii), the Court should not favor one purpose of ERISA over another.

### 1. Merrill's cases are distinguishable or unpersuasive, or both.

In the absence of any textual or contextual support for its position, Merrill wrongly claims that "courts widely reject" any interpretation of Subsection (ii) that looks to actual results rather than overall plan purpose. Appellees' Br. 23-26. This characterization misapprehends the reasoning of each decision, few of which meaningfully address the "results in a deferral of income" standard in Subsection (ii). Instead, Merrill principally cites cases that either apply Subsection (i) or rest upon the DOL's "bonus program" regulation, which does not apply here, as discussed below.

For its part, the Ninth Circuit's analysis in *Rich v. Shrader*, 823 F.3d 1205 (9th Cir. 2016), Appellees' Br. 25 & 30, is wrong. *Rich*'s assertion that "the paramount consideration" to determine ERISA coverage "is whether the primary purpose of the plan is to provide deferred compensation," 823 F.3d at 1210, applied *Murphy's*

interpretation of Subsection (i). *See Murphy*, 611 F.2d at 575 (reasoning that "provides retirement income" refers "only to plans designed for the purpose of paying retirement income"). *Rich* ignored that Subsection (ii) uses different language with a functional "results in" test that contains no purpose requirement. *See supra* I.A.1 at 3-4.

Cases cited by Merrill for the proposition that Subsection (ii) applies if a plan "generally functions like a retirement plan," Appellees' Br. 26, fare no better. *Hagel v. United Land Co.*, 759 F.Supp. 1199 (E.D. Va. 1991), *Inman v. Klockner-Pentaplast of America, Inc.*, 467 F.Supp.2d 642 (W.D. Va. 2006), and *Depew v. MNC Financial, Inc.*, 819 F.Supp. 492 (D. Md. 1993), Appellees' Br. 26, were decided before *Tolbert*, *Paul*, and *Shafer I* and *II*, and suffer from the same analytical deficiencies as *Rich*. *Hagel* and *Inman* also applied *Murphy*'s "purpose" test without interpreting the text of Subsection (ii).[3]

Further, *Scanlan v. American Airlines Group*, 384 F.Supp.3d 520 (E.D. Pa. 2019), Appellees' Br. 31, was decided under Subsection (i) only, so its use of a purpose-based test is irrelevant.

---

[3] *Inman* also involved the purchase of company stock, not deferred compensation. 467 F.Supp.2d at 651.

The plan in *Murphy*, Appellees' Br. 24 & 30, was a bonus plan. *Murphy*, 611 F.2d at 575. *Murphy* is also distinguishable because—as discussed above, *supra* Part I.A at 7-8—it did not involve a "deferral of income." Rather, participants had a present interest in future royalty proceeds from drilling projects. *Murphy*, 611 F.2d at 572-73. The same goes for the stock-option plan in *Oatway v. American International Group*, 325 F.3d 184 (3d Cir. 2003). Appellees' Br. 25 & 30 n.3. It was a bonus plan, and it did not involve a deferral of income; the stock options merely granted employees the right to purchase shares at a set price, 325 F.3d at 188-89, 185-86.[4]

In *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929 (8th Cir. 1999), Appellees' Br. 25 & 30 n.3, the Eighth Circuit held that a phantom stock plan was a bonus plan. *Emmenegger*, 197 F.3d at 932. The court reasoned that the plan did not satisfy the DOL's systematic-deferral test

---

[4] Merrill also cites *Pasternack*, in which a "stock ownership plan was not a pension plan even though the 'ownership stake could be liquidated into cash only after retirement.'" Appellees' Br. 25. But like *Murphy* and *Oatway*, *Pasternack* did not involve a deferral of income. Rather, plan participants received an ownership stake—a benefit that accrued during the participant's employment—in exchange for an investment of capital. 863 F.3d at 168-69. When a departing officer sold shares back to the company, the proceeds constituted a return of capital—not the receipt of deferred income. *Id.*

because any deferral until a participant's termination or retirement would not be "systematic" but would occur only "by happenstance." *Id.* at 933. Putting aside that the DOL's test does not apply here, *see infra* Part I.B-I.C, post-termination deferrals under the WealthChoice Plan occur *by design*, not happenstance. *See* Appellants' Br. 31.

*Teague v. South Elevator Group, Inc.*, 2003 WL 21418100 (M.D.N.C. Mar. 27, 2003), Appellees' Br. 28-29, was decided before *Tolbert*, *Paul*, and *Shafer I* and *II*, and the court's application of a purpose-based test (rather than a results test) is unpersuasive. First, the plan was a bonus plan, unlike the Plan in this case. 2003 WL 21418100, at *2. Second, *Teague* considered only the "purpose" and "intent" of the plan "as a method of figuring out incentive bonuses for a few key employees." *Id.* at *4. Third, *Teague* reasoned that "circumstances, not the Plan, result[ed] in deferral beyond employment," *id.* at *4 (cleaned up), but ignored that a pension plan may arise from either the plan's "express terms *or as a result of surrounding circumstances*," 29 U.S.C. §1002(2)(A) (emphasis added). The *Teague* court was animated by a public-policy concern about what "employers in the future" might do, rather than construing the statute as written. 2003 WL 21418100, at *4.

14

Finally, the court in *Juric* v. *USALCO, LLC*, 659 F.Supp.3d 619 (D. Md. 2023), Appellees' Br. 26, applied a test that *required* income to be deferred until the termination of employment or beyond for ERISA to apply. 659 F.Supp.3d at 633. But "results in" and "requires" are not synonymous. *Wilson v. Safelite Group, Inc.*, 930 F.3d 429, 434 (6th Cir. 2019). Subsection (ii) does not require that income always be deferred until the end of employment or beyond. *See Tolbert*, 758 F.3d at 623; *see also Wilson*, 930 F.3d at 435 (Subsection (ii) "covers plans containing terms that have as an effect, issue, or outcome—even if not as a requirement—deferral of income by employees to periods extending to the termination of covered employment or beyond." (cleaned up)).

### 2. Merrill's "slippery slope" hypotheticals miss their mark.

Lacking an interpretation of the statute that is rooted in the text, legislative history, or principled case law, Merrill resorts to misleading hypotheticals. Appellees' Br. 27-28 (discussing three examples where paychecks or bonuses were paid after former employees died, retired, or departed the company). None implicates ERISA, which does not cover the timing of payment or other normal payroll practices that are typically governed by state law. *See, e.g.*, N.C. Gen. Stat. §95-25.6 ("Wages based

upon bonuses, commissions, or other forms of calculation may be paid as infrequently as annually if prescribed in advance."). Issuing paychecks every two weeks or year-end bonuses in the first quarter of the following year, Appellees' Br. at 27-28, are timing-of-payment issues that are unlike deferring commissions for eight years.

Merrill also speculates that if ERISA covers the Plan—which pays retirees—then future employers will not offer similar plans that also pay retirees. Appellees' Br. at 28. Merrill thus paradoxically urges the Court to *reject* ERISA coverage to *protect* retirement assets. That's a policy argument for Congress, not a basis interpreting ERISA.[5]

---

[5] For the same reason, the Court need not consider the policy arguments of amici. *See Tolbert*, 758 F.3d at 626 n.6 ("We are aware of the various policy-based arguments presented in the amicus brief .... We decline, however, to engage in any policy debate that would affect how we interpret this statute. Indeed, it is not our role to do so. We instead apply ERISA as written." (cleaned up)). Even if the Court were to consider these policy arguments, it should reject them. Amici argue that deferred-compensation plans encourage finance employees to prioritize long-term performance over short-term gains. ECF 34-1, Br. of Sec. Indus. & Fin. Mkts. Ass'n, at 3, 8. Not Merrill's Plan. Far from rewarding long-term performance, it simply defers commissions that reward short-term performance (i.e., revenue generated in a single year). And amici's concern that ERISA imposes costs on employers, *e.g.*, ECF 30, Br. of Soc'y for Human Res. Mgmt., at 19-25; ECF 33, Br. of Chamber of Commerce, *et al.*, at 17-21; ECF 34, Br. of Sec. Indus. & Fin. Mkts. Ass'n, at 10-15, cannot justify excluding plans that meet ERISA's statutory definition from its protections.

**B.   Merrill's Plan results in a deferral of income by employees.**

Merrill does not dispute that, between January 1, 2018, and June 30, 2024, it made post-termination payments, including retirement payments, to ▮▮▮▮▮▮▮▮.[6] JA890. Merrill argues that "the mere possibility that income *can* be deferred does not mandate ERISA coverage." Appellee's Br. 25 (quoting *Rich*, 823 F.3d at 1211). But the Plan does not present a "mere possibility" of deferral—it routinely, and by design, "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." 29 U.S.C. §1002(2)(A)(ii).

Merrill wrongly argues that the Plan does not provide for a "deferral of income" because FAs do not "earn" the money until it vests. Appellees' Br. 33. Under the Plan, "Vesting Date" means "the date ... an award becomes *earned* ...." JA69 (emphasis added). In other words, Merrill defines "earned" and "vested" to mean the same thing. But that cannot be right: benefits must be earned before they can vest. If "vest"

---

[6] This percentage differs from the annual percentages Merrill cites, Appellees' Br. 16; JA556, because it includes FAs who were paid both as current employees in earlier years and as former employees in later years.

17

and "earn" mean the same thing, then there would be no point in vesting, as there could be no benefits that have been earned but not also vested. Indeed, ERISA's vesting requirement protects benefits that have been earned but are not payable until later. 29 U.S.C. §1053(a); *see Alessi*, 451 U.S. at 512-13. Merrill's argument would render the concept of "vesting" superfluous. *See Tolbert*, 758 F.3d at 624 (statutory terms "'cannot be meaningless, else they would not have been used'" (quoting *United States v. Butler,* 297 U.S. 1, 65 (1936))).

Unlike the benefits at issue in *Boos*, *Murphy*, and *Rathbun*, Appellants' Br. at 34, FAs' benefits have been earned because Merrill has already received and retained the revenue associated with the deferred-compensation awards. *See supra* Part I.A at 7-8; JA880 (calculating deferred compensation at end of year based on █████████████████ █████████████████████████████████████). As in *Tolbert*, the FAs have "foregone income in exchange for receiving income at a later date." *Tolbert*, 758 F.3d at 625-26 (cleaned up). That Merrill forced them to do so, Appellees' Br. at 34, is irrelevant under ERISA. *See supra* Part I.A at 6-7.

Merrill correctly notes that waiting eight years to get paid is a "real argument." Appellees' Br. 36. It is also the correct argument. But Merrill is wrong that "this Court's precedent forecloses it." *Id.* Merrill's only allegedly supportive case, *Fraver v. N.C. Farm Bureau*, 801 F.2d 675 (4th Cir. 1986), is inapposite.

In *Fraver*, Farm Bureau marketed insurance through independent agents. *Id.* at 676. Upon termination, agents received payments "equal to the agent's renewal commission for the last 12 months prior to termination," paid over sixty months. *Id*. These payments compensated departing agents for transferring *future* renewal commissions to successor agents, who inherited the ongoing renewal stream but had the payment amounts deducted from their own commissions over the same sixty-month period. *Id*. at 678. The payments to departing agents did not constitute deferred income because the arrangement was "a buy-out in which the departing agent receives payments based on what he leaves behind in the way of business for his successor." *Id.*

This case is nothing like *Fraver*. There is no buy-out here. Instead, this case involves mandatory deferrals of commissions like those that the courts in *Tolbert*, *Paul*, and *Shafer I* and *II* concluded were covered by

Subsection (ii). *Tolbert*, 758 F.3d at 625; *Paul*, 2018 WL 784577, at \*6*;*

*Shafer I*, 2023 WL 8100717, at \*20*; Shafer II*, 2024 WL 4697235, at \*18.

### C.    Merrill's Plan defers income "to the termination of covered employment or beyond."

Merrill does not dispute that the Plan defers FAs' commissions for

up to eight years, including until an FA terminates employment.

Appellees' Br. 37. Merrill's argument that there is "no necessary

relationship" between the awards and termination, *id.*, ignores the Plan's

rolling-deferral structure. Because each annual award takes eight years

to vest, the Plan creates overlapping deferral periods that virtually

ensure each departing FA (with at least eight years of service) will have

eight years of unpaid deferred compensation.

The "relationship" between awards and termination is, thus, a core

feature of the Plan. Accordingly, Milligan does not rely on "exceptions

rather than the general design and purpose" of the Plan. Appellees'

Br. 38. As discussed above, the Plan's "purpose" is irrelevant under

Subsection (ii), and *Rich*, *Oatway,* and *Murphy* do not suggest the

contrary. *See supra* Part I.A.1 at 11-13. What matters is that the *effect* of

the Plan virtually ensures that all departing FAs with at least eight years

of tenure will have unpaid deferred compensation at termination, and the

20

Plan expressly provides for post-termination payment of this deferred compensation in several situations—including retirement.

## II.    Merrill's Plan is not a bonus program exempt from ERISA.

Nor can Merrill escape ERISA by characterizing WealthChoice awards as "bonuses" under 29 C.F.R. §2510.3-2(c). The awards are deferred commissions, not bonuses. And Merrill's fundamental premise—that DOL can categorically exempt qualifying pension plans from ERISA through regulation—lacks any statutory foundation.

### A.    WealthChoice awards are not "bonuses."

Neither ERISA nor the DOL regulation defines "bonus," but the parties agree that a bonus is payment provided "over and above" an employee's "normal compensation." Appellant's Br. 38-40; Appellee's Br. 40. And the Fair Labor Standards Act has long distinguished discretionary bonuses (which are not part of the "regular rate" or "normal compensation") from non-discretionary payments (which are). Appellant's Br. 39 n.14. A discretionary bonus is determined "at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly." 29 U.S.C. §207(e)(3).

21

Ignoring the FLSA's helpful distinction, Merrill baldly claims that WealthChoice awards are provided "over and above" an FA's "normal compensation."[7] Appellee's Br. 40. For at least three reasons, this delineation does not withstand scrutiny.

First, Merrill concedes that monthly commissions are not bonuses, implying that they are "normal compensation," but fails to adequately distinguish them from the annual WealthChoice awards. Appellees' Br. 44. Both forms of compensation are formula-driven commissions calculated on a "standard grid rate" announced before the performance year. *See, e.g.*, JA884 ("████████████████████████").

Second, although FAs must meet a minimum-production threshold to earn *both* monthly commissions *and* WealthChoice awards, Merrill maintains that the latter reward "standout performance" because a higher production threshold applies, while the monthly commissions

---

[7] In a sleight of hand, Merrill juxtaposes deferred compensation (which it categorizes as a bonus) with an advisor's guaranteed *base salary* (which it categorizes as "normal compensation"). Appellees' Br. 40. But the "guaranteed" nature of an advisor's base salary simply reflects that it is not tied to revenue generation—Merrill "████████████████████████████████████████████████████████████" *See* JA881. As Merrill acknowledges, revenue-based commissions are not inherently bonuses. Appellees' Br. 44.

reflect "day-to-day revenue generation." Appellees' Br. 44. But this distinction makes no sense because Merrill uses an FA's "day-to-day revenue" to calculate monthly commissions and annual awards, regardless of which threshold applies. *See* JA851; *Rappaport v. Guardian Life Ins. Co. of Am.*, 2025 WL 1156760, at \*8 (S.D.N.Y. Apr. 21, 2025) (interpreting the term "commissions" to have a different meaning than a "bonus."). Moreover, ██████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████ JA719; JA721 (████████████████████████████ ██████████████).

Third, Merrill insists that conditioning payments on continuous employment "through the vesting date," Appellees' Br. 40, renders the awards bonuses by rewarding "longevity," *id.* at 44. But an employer cannot exclude a plan from ERISA coverage *based on* conditions in the plan that violate ERISA. *See Williams v. Wright*, 927 F.2d 1540, 1544 (11th Cir. 1991) ("[A]n employer's failure to meet an ERISA requirement does not exempt the plan from ERISA coverage."); *Hepple v. Roberts &*

*Dybdahl, Inc.*, 622 F.2d 962, 965 (8th Cir. 1980) ("What is not allowed is the use of any condition to defeat an employee's rights to the benefits guaranteed by the minimum vesting standards of the Act.); *see also supra* Part I.A at 5-6.

Merrill makes much of the fact that the Plan declares itself to be "discretionary," but even if that were true, Merrill acknowledges that employer discretion is not dispositive. Appellee's Br. 44. To the extent that a high degree of employer discretion may indicate a bonus, that is irrelevant here: the WealthChoice awards are not discretionary. The published grid governs the amount of the award, and there is no evidence in the record that Merrill failed to credit commissions in accordance with the grid.

More importantly, the WealthChoice awards are *commissions*, not bonuses. *See* Appellant's Br. 39-40. Merrill contends that Milligan's commission-bonus distinction "lacks merit" because the regulation "does not even refer to 'commissions,'" so Milligan's position constitutes an "atextual carveout." Appellees' Br. 43. But by this logic, the plain meaning of "bonus" includes any form of compensation not expressly excluded from the regulation—which is to say, every form of

compensation. Thus, Merrill seeks an atextual expansion—a "carve-in"—such that the regulation's failure to use the word commission somehow means commissions can be bonuses.

Cases that distinguish between "commissions" and "bonuses" are relevant, *contra* Appellees' Br. 42, because they demonstrate that the terms are different. "Bonuses" are "a premium paid in addition to what is due or expected, especially a payment by way of division of a business's profits, given over and above normal compensation," Appellant's Br. 38-39 (citing *Shafer II*, 2024 WL 4697235, at *7); "commissions," by contrast, are "a percentage of the money received in a sale or other transaction paid to the agent responsible for the business," *id.* at 41 (citing *Shafer II*, 2024 WL 4697235, at *7); *see also Rappaport*, 2025 WL 1156760 at * 8 (a commission is a "fee paid to an agent or employee ... as a percentage of the money received"). Because WealthChoice awards are commissions, they cannot also be bonuses. And because they are not bonuses, they cannot be exempt from ERISA under 29 C.F.R. §2510.3-2(c).

Ultimately, Merrill argues that the annual awards are bonuses based on the Plan's stated purpose. Appellees' Br. 41-42. But virtually *any* employee benefit can "state a purpose of promoting superior

performance and retention." Appellees' Br. 41. Moreover, Merrill's argument rests on a false binary—that a plan either "provides retirement income" under Subsection (i) or is a bonus under the regulation. *See Faris v. S. Ute Indian Tribe*, 2023 WL 7386870, at *5 (D. Colo. Nov. 8, 2023) (stating that "[a] bonus plan excluded from ERISA will be found where payments made are not to provide retirement income"). This altogether ignores Subsection (ii).

At any rate, Merrill's cited cases do not decide the bonus regulation's coverage based on purpose alone.[8] *See, e.g.*, *Emmenegger*, 197 F.3d at 933 (plan's "stated purpose" reinforced conclusion that bonus regulation applied). In *Emmenegger*, for example, "a deferral would only

---

[8] The fact that *Wilson v. Safelite* relied on the plan's purpose in *declining* to apply the bonus regulation, 930 F.2d at 438, does not mean that the regulation automatically applies to plans with a stated bonus purpose. Appellees' Br. 41. *Safelite* means only that the bonus regulation *may* apply to plans that state an intention to operate as a bonus plan— not that it *must*. *Id.*

*McKinsey v. Sentry, Ins.*, 986 F.2d 401 (10th Cir. 1993), likewise cannot aid this Court in identifying a bonus plan. Appellees' Br. 41. The court there took for granted that the payments arising from the "Golden Career Bonus Plan" were, in fact, bonuses, and only analyzed the plan to determine whether payments were systematically deferred. *McKinsey*, 986 F.2d at 406. In contrast, here, ███████████████████. JA887.

occur by happenstance." *Id*. In *Oatway*, the plaintiff was granted stock-option awards just twice over ten years that were "discretionary, given in recognition of special service, and awarded in addition to his regular compensation." *Id*. at 186, 189. This is a far cry from the Plan, which annually grants awards even if an FA's production decreases by over ninety percent, Appellant's Br. 48, and regularly pays deferred compensation after an advisor's employment ends, *id*. at 30.

Likewise, Merrill wrongly insists that the court in *Callan v. Merrill Lynch & Co.*, 2010 WL 3452371 (S.D. Cal. Aug. 30, 2010), "primarily rested its decision on the plan's purpose of promoting retention." Appellees' Br. 46. The *Callan* court found that ERISA did not apply because the plan's "express terms" contained no provisions "to calculate or determine the benefits of the plan or the procedure for receiving benefits." 2010 WL 3452371, at *8. The Plan here includes a detailed grid.

## B. Even bonuses are not exempt from ERISA.

Even if WealthChoice awards were bonuses, that would not support the district court's judgment, because the Secretary of Labor has no authority to exempt plans from ERISA if those plans fall within the statute's definition of a pension plan. As explained above, *see supra*

Part I.A, the WealthChoice Plan is a "pension plan" under Subsection (ii) because it "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." 29 U.S.C. §1002(2)(A)(ii). Because the Plan qualifies as an ERISA plan by statute, the Secretary cannot remove it from ERISA by regulation.

Just last year, in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the Supreme Court emphasized that it is the responsibility of courts—not administrative agencies—to "exercise independent judgment in determining the meaning of statutory provisions," *id.* at 412, and that courts must "set aside any [agency] action inconsistent with the law as they interpret it," *id.* at 392; *see also id.* at 400-01 ("agencies have no special competence in resolving statutory ambiguities. Courts do."). Because 29 C.F.R. §2510.3-2(c) is inconsistent with the statutory definition of a pension plan in 29 U.S.C. §1002(2)(A)(ii), that should end any analysis of the regulation.[9]

---

[9] To reiterate briefly, Subsection (ii) expressly provides that "*any plan*" that "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond" is an "employee benefit pension plan" subject to ERISA. 29 U.S.C. §1002(2)(A)(ii) (emphasis added). Unlike the DOL's regulation, nothing in the statutory text suggests that the deferral must be "systematic." As the Fifth Circuit correctly observed in *Tolbert*, Subsection (ii) applies

In any event, for multiple reasons, the DOL's regulation lacks the "power to persuade" courts of its reading of ERISA's requirements. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). First, as just noted, 29 C.F.R. §2510.3-2(c) adds a requirement for bonus programs to constitute pension plans that exists nowhere in the statute. Specifically, under the regulation, bonus programs will qualify as ERISA pension plans only if "such payments are *systematically* deferred to the termination of covered employment or beyond." *Id.* (emphasis added). Yet no such "systematic deferral" requirement exists in the statute.

Second, the DOL has never explained why it thought a "systematic deferral" was statutorily allowed or required. To the contrary, in the 1975 Notice of Proposed Rulemaking, the Department merely identified systematic deferral as one circumstance that *would* bring a bonus program within ERISA's coverage: "Bonus programs ... may be pension plans. For example, if payments are systematically deferred to the termination of covered employment or beyond, a bonus program may ...

---

whenever "a 'deferral of income' arises as an 'effect, issue, or outcome' from that plan." *Tolbert*, 758 F.3d at 625 (internal quotations omitted).

constitute a pension plan." 40 Fed. Reg. 24642 at 24642 (June 9, 1975).[10]

Yet the regulatory language purports to make systematic deferral a

requirement to qualify as a pension plan, with no explanation for this

distinction. *Compare id.* at 24653.

Finally, contrary to Merrill's argument, Appellee's Br. 48-49,

Congress did not indicate approval of the bonus regulation when it added

Section 1002(2)(B) to ERISA in 1980, granting the Labor Secretary

limited authority to exempt certain employee-benefit programs from

ERISA's definition of "pension plans." 29 U.S.C. §1002(2)(B).[11] Quite the

---

[10] In the notice of proposed rulemaking, the regulation was
originally numbered as 29 C.F.R. §2510.3-3(h). It was subsequently
renumbered as 2510.3-2(c) in the notice of final rulemaking, without
substantive changes.

[11] Section 1002(2)(B) provides in relevant part:

> The Secretary may by regulation prescribe rules
> consistent with the standards and purposes of this
> chapter providing one or more exempt categories
> under which—
>
> (i)     severance pay arrangements, and
>
> (ii)    supplemental retirement income payments,
>         under which the pension benefits of retirees
>         or their beneficiaries are supplemented to
>         take into account some portion or all of the
>         increases in the cost of living (as determined
>         by the Secretary of Labor) since retirement,

opposite. Section 1002(2)(B) explicitly states that the Secretary's regulatory authority is constrained by ERISA's text: "The Secretary may by regulation prescribe rules *consistent with the standards and purposes of this chapter*" to exempt certain benefit plans from ERISA's requirements. *Id.* (emphasis added). The Secretary has no power, by regulation or otherwise, to exempt plans from ERISA that meet all of the statutory requirements to be pension plans governed by ERISA.[12]

Thus, even if Merrill's WealthChoice Plan could be characterized as a bonus program, it would still be subject to ERISA because it meets the statutory requirements of a pension plan. To the extent that 29 C.F.R.

---

shall, for purposes of this subchapter, be treated as welfare plans rather than pension plans.

29 U.S.C. §1002(2)(B).

[12] Section 1002(2)(B) shows that employers cannot evade ERISA's requirements through clever drafting of plan terms. The statute goes on to state:

In the case of any arrangement or payment a principal effect of which is the evasion of the standards or purposes of this chapter applicable to pension plans, such arrangement or payment shall be treated as a pension plan.

29 U.S.C. §1002(2)(B). Merrill thus cannot evade its obligations under ERISA by (mis)characterizing its Plan as a bonus program; and the Department of Labor cannot permit them to do so by adopting a regulation that conflicts with the statutory text.

§2510.3-2(c) suggests otherwise, it is inconsistent with the statutory text of ERISA and should be disregarded.

## CONCLUSION

For the reasons set forth above and in Plaintiff's opening brief, Merrill Lynch's WealthChoice Plan is governed by ERISA. The district court's judgment should be reversed.

August 28, 2025                    Respectfully submitted,

John S. Edwards, Jr.               */s/ Mathew P. Jasinski*
AJAMIE LLP                         Mathew P. Jasinski
711 Louisiana, Suite 1600          Riley Breakell
Houston, TX 77002                  MOTLEY RICE LLC
(713) 860-1600                     20 Church Street, 17th Floor
                                   Hartford, CT 06103
                                   (860) 882-1681
Robert A. Izard, Jr.
IZARD, KINDALL
& RAABE, LLP
29 South Main St., Suite 305
West Hartford, CT 06107
(860) 493-6295

                                   *Attorneys for Plaintiff-Appellant*

# CERTIFICATE OF COMPLIANCE

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. **25-1385**    Caption: **Milligan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.**

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2) & 40(d)(3).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6). Sans-serif type, such as Arial, may not be used except in captions and headings.

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

☑ this brief or other document contains   **6,455**   [*state number of*] words

☐ this brief uses monospaced type and contains   _____   [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

☑ this brief or other document has been prepared in a proportionally spaced typeface using
MS Word for MS 365 MSO v.2502   [*identify word processing program*] in
Century Schoolbook, 14 pt.   [*identify font, size, and type style*];

**or**

☐ this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font, size, and type style*].

**NOTE: The Court's preferred typefaces are Times New Roman, Century Schoolbook, and Georgia. The Court discourages the use of Garamond.**

(s) Mathew P. Jasinski

Party Name Appellant Kelly Milligan       Date: August 28, 2025

12/09/2024 NA/MEO

## CERTIFICATE OF SERVICE

I hereby certify that, on August 28, 2025, I electronically filed the foregoing Reply Brief for Appellant with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*/s/ Mathew P. Jasinski*
Mathew P. Jasinski